Croft v. White.

MARY A. CROFT v. BENJAMIN W. WHITE et al.

1. PRIVATE WRITINGS: EFFECT OF ALTERATION BY A STRANGER.—A material alteration in a deed or other instrument, made by a stranger without the knowledge or privity of the grantee, obligee, or holder, does not change or affect its legal operation; the ancient rule on that subject is not now recognized by the courts. See *U. S.* v. *Spalding*, 2 Mason's R. 478; 1 Green. Ev. § 566; 4 Kent Com. 9th ed. 526.

2. SAME: BURDEN OF PROOF WHERE ALTERATION APPEARS IN INSTRUMENT.—A party seeking to recover upon an instrument, which appears on its face to have been altered in a material part, must show either that it was done by the consent of the maker, or that the alteration was made by a stranger, without his consent or privity. See *Waring* v. *Smyth*, 2 Barb. Chan. R. 119; *Doe* v. *Palmer*, 6 Eng. Law and Eq. R. 155.

ERROR to the Circuit Court of Jasper county. Hon. John Watts, judge.

*T. J. and F. A. R. Wharton*, for plaintiff in error,
Cited Byles on Bills, 389.

*George L. Potter*, for defendant in error.

HARRIS, J., delivered the opinion of the court.

Plaintiff in error commenced her action, to recover of defendants the hire for two negroes. There are two counts in the complaint: one on a promissory note alleged to be due the 1st January, 1856, for eighty dollars, for the hire of two negroes, naming them—with-

out date—signed by the defendants, and made a part of the complaint. The other count is founded upon an open account for the hire of negroes for the year 1856, by the same defendants, and for one hundred and fifty dollars; which account is also filed with the complaint.

To this complaint the defendants filed, 1st, a general denial; and 2d, a special answer, under oath, denying that the note sued on is their "act and deed;" because, they say, that *after the making and delivery thereof to the plaintiff*, said note was changed in a material part, without the knowledge or consent of defendants, to wit, in this: the said note, *when given and delivered to plaintiff*, was for the sum of *sixty dollars*, and since the execution and delivery thereof, without their knowledge or consent, the word sixty has been erased, and the word eighty interlined.

To this answer plaintiff filed her replication, stating that she did not know whether the erasure of "sixty" and the interlineation of "eighty" were made after defendants signed said note, or not; but she avers that eighty dollars was the amount intended and agreed on for the hire of said negroes, for the year 1855. That said note was not changed by plaintiff, or by any one authorized by her; and that if it was changed, as alleged, it was so changed before it came to her hands.

To this replication there was a demurrer by defendants, which was sustained by the court. Issue was then joined on the second answer, and the cause proceeded to trial. The bill of exceptions shows, that plaintiff read the complaint (of which the note was a part). She then introduced a witness, Jason Hutto, who testified that the negroes were hired for defendant White, during the year 1855; they could plough some. That defendant said he had given his note for sixty dollars to Augustus Croft, son of plaintiff, for their hire, with defendants Lewis and Barbour as securities. That plaintiff and defendant White had a conversation at White's house; plaintiff asked eighty dollars for the hire of the negroes; White made no reply, as witness recollects.

Green C. Chandler was then examined for plaintiff, who testified that White had the negroes during the year mentioned in the account; that they were worth, at least, sixty dollars each. That plaintiff received the note sued on, some time *in the summer of the*

*year* the negroes were at White's, *in the condition it is now.* When it was due, witness presented it to White for payment, who alleged that it had been changed from sixty to eighty; that sixty dollars was what he agreed with Augustus T. Croft, to pay for the hire of the negroes; that it had been changed without his authority. Witness informed plaintiff of this, who instructed him to return the note to White, which witness offered to do, on the 10th March, 1856, and stated to him that plaintiff refused to receive the note as any evidence of his indebtedness. He refused to take it. The note was altered without White's knowledge, as witness learned from him. Witness further stated, it was altered without plaintiff's consent, knowledge, or approval. She never knew that it had been altered without White's approval, until witness presented it for payment, and when it came to her knowledge, she directed it to be returned as stated. White said he would pay the sixty dollars. Witness declined to take it, as he had no authority. He did not offer the money. Witness afterwards offered to take the sixty dollars, but White refused to pay, unless witness would deduct twenty dollars, lawyer's fees. A suit had been instituted, but had been dismissed.

This was all the evidence. Defendants' counsel then moved the court to rule out this evidence; which was accordingly done, and exception taken.

A verdict was then rendered for defendant. A motion for new trial was made and refused, and exceptions thereto, and the case brought to this court by writ of error.

These errors are assigned:—

1. The action of the court, on the demurrer to plaintiff's replication.

2. In ruling out plaintiff's testimony.

3. In refusing a new trial.

It is not material to notice the first ground of error relied on, as the matter stated on the replication, if admissible, was admissible under the issue, on the second answer.

Was it competent for the plaintiff, in avoidance of the matters alleged in the second answer, to show, that she was ignorant of the alleged alteration; that there had been no alteration since the delivery of the note to her, or at any time with her knowledge, consent, or privity; and that the sum agreed on for the hire of the

negroes was really eighty dollars, and not sixty, as alleged by defendants?

The old doctrine, that every material alteration in a deed, *even by a stranger*, and without privity of either party, avoided the deed, is strongly condemned, by Justice Story, in the *U. S.* v. *Spalding*, 2 Mason, R. 478. This alteration by a stranger is termed *spoliation*, and does not change the legal operation of the instrument. 1 Greenleaf on Evidence, 702, § 566, and note 1; 4 Kent Com. 9th ed. note 1, 526.

The party seeking to recover, must show that the alteration was not made by him, or those under whom he claims. *Waring* v. *Smyth*, 2 Barb. Ch. R. 119; *Doe* v. *Palmer*, 6 Eng. L. & E. R. 155.

In explanation of her conduct, and with a view to recover on the note, either for the full amount, or to the extent of the real contract of the parties, as intended by them to be expressed in the note, or to ascertain whether *any* such contract was ever assented to by the respective parties, the plaintiff was certainly entitled to have her testimony, tending to establish these facts, submitted to the jury. The testimony was relevant and proper, and should not have been ruled out.

Even admitting, however, that the note was a nullity, the testimony was competent, under the common count, against White, at least; the jury, if satisfied of his liability to the plaintiff, under the evidence, might have returned a verdict against him, and in favor of the other defendants.

In any view, therefore, the ruling of the court was wrong, and a new trial should have been granted.

Let the judgment be reversed, cause remanded, and a *venire de novo* awarded.